GEORGE W. PETTENGELL & others *vs.* ALCOHOLIC BEVERAGES CONTROL COMMISSION.

Suffolk. October 5, 1936. — October 27, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Alcoholic Beverages Control Commission. Mandamus. License. Public Officer. Intoxicating Liquor,* Licenses.

Upon a petition by voters and taxpayers of a town which had an increased resident population during the summer months, this court ordered that a peremptory writ of mandamus issue directing the

alcoholic beverages control commission to exercise the powers reposed in them by § 64 of G. L. c. 138, in the amended form appearing in St. 1934, c. 385, § 20, to examine into what, from facts alleged in the petition and admitted by the commission to be true, appeared to have been an issuance by the town's local licensing authorities under § 17 of G. L. c. 138 in the amended form appearing in St. 1935, c. 440, § 15, of seasonal licenses of doubtful validity, and to exercise their power of revocation and cancellation with respect to such licenses as, after examination, they should find to be in excess of the town's quota.

The estimate to be made by the local licensing authorities under § 17 of G. L. c. 138 in the amended form appearing in St. 1935, c. 440, § 15, of the temporary resident population of a town having an increased resident population during the summer months must be determined at a formal and regularly constituted meeting of the town's licensing board and be made a part of its records.

Even if voters and taxpayers of a town having an increased resident population during the summer months have a remedy by certiorari against the local licensing authorities for issuing licenses in excess of the number permitted by § 17 of G. L. c. 138, in the amended form appearing in St. 1935, c. 440, § 15, they also are entitled to a writ of mandamus requiring the alcoholic beverages control commission to exercise, with respect to such illegal issue, the powers reposed in it by § 64 of G. L. c. 138, in the amended form appearing in St. 1934, c. 385, § 20.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on June 23, 1936.

The case was reserved and reported by *Qua*, J.

*E. Mark Sullivan*, (*G. I. Kellaher* with him,) for the petitioners.

*R. Clapp*, Assistant Attorney General, for the respondents.

RUGG, C.J.  This is a petition for a writ of mandamus by seven registered voters and taxpayers in the town of Salisbury.  At the hearing it was agreed in open court by all parties that all the allegations in the petition were true, that the only defences were the issues of law raised by the answer, and that the answer was not a demurrer.  The single justice reserved and reported the case on the petition and answer and this agreement, with the statement that in the exercise of any discretion vested in him he would not dismiss the petition.

The respondents are the individuals constituting the alcoholic beverages control commission established by § 43, inserted in G. L. (Ter. Ed.) c. 6, by St. 1933, c. 120, § 2,

and amended by St. 1933, c. 375, § 1. They are hereafter called the commission. By G. L. c. 138, § 64, as appearing in St. 1933, c. 376, § 2, and as amended by St. 1934, c. 385, § 20, it is provided that, "If it appears to the commission that a license has been issued under this chapter by the local licensing authorities in excess of the quota prescribed by section seventeen or in violation of section sixteen A or any other provision of this chapter, the commission shall, after notice. to said authorities and to the holder of such license and after reasonable opportunity for them to be heard by it, revoke such license, whereupon such license shall be surrendered to said authorities, and the decision of the commission shall be final and conclusive." This section imposes upon the commission a public official duty to make determination whether the local licensing authorities have issued licenses in excess of the quota prescribed by said § 17. The performance of that duty may be enforced by petition for mandamus by voters or taxpayers of the town. *Brooks v. Secretary of the Commonwealth*, 257 Mass. 91, 93.

The "quota prescribed" must be determined in conformity to § 17 of said c. 138 as amended by St. 1935, c. 440, § 15. It is there provided with reference to the number of licenses granted in a town like Salisbury that in a town "which has an increased resident population during the summer months, the local licensing authorities may make an estimate prior to April first in any year of such temporary resident population as of July tenth following, a copy of which estimate shall be transmitted forthwith to the commission, and one additional license under section twelve . . . may be granted for each unit of one thousand or additional fraction thereof of such population as so estimated, and one additional license under section fifteen . . . may be granted for each unit of five thousand or additional fraction thereof of such population as so estimated." The allegations of the petition are that the licensing board of Salisbury in the pretended exercise of its authority under said § 17 has in form of law granted a total of thirteen so called seasonal licenses of which ten are of a class described in § 12 and three of a class described

in § 15 of said c. 138. There are further allegations to the effect that thirteen seasonal licenses are in excess of the legal quota allowed to the town of Salisbury in that the total of the temporary resident population as of July 10, 1936, will not be in excess of four thousand. Detailed allegations support these general averments. It is also alleged that the licensing board of the town on March 2, 1936, officially notified the commission that it had estimated the temporary resident population of the town as of July 10, 1936, at nine thousand five hundred persons, and thereafter on April 8, 1936, "two members of the licensing board . . . as it was then constituted, pretending to act on behalf of said licensing board, but without any official authority therefor granted at a duly constituted meeting of said licensing board, delivered a written notice" dated March 31, 1936, addressed to the commission, of this tenor: "You are hereby notified that in accordance with Chapter 376 of the Acts of 1933 and amendments thereto this Board have this day estimated the temporary resident population during the summer months in the town of Salisbury as of July 10, 1936, as 15,000." It was signed by only two members of the licensing board. That estimate "was not the official action of a duly constituted meeting of the licensing board" of the town of Salisbury, and both estimates "are arbitrary, capricious and were made in absolute disregard of all known subsidiary existing data and facts upon which a *bona fide* and legal estimate should be made." Such existing data and facts are specified at some length in the petition.

It was pleaded in the answer (1) that the petitioners have not set forth any matter or cause entitling them to a writ of mandamus against the respondents, (2) that the remedy of the petitioners, if any, was a petition for a writ of certiorari against the licensing board of the town of Salisbury, and (3) that the respondents have no duty nor authority to act further with respect to the facts alleged in the petition.

Under said § 17 as amended the "quota" for seasonal licenses may be fixed by the estimate of the local licensing authorities when made in good faith and according to law.

It is apparent from the terms of that section as already quoted that the estimate of the temporary resident population as of July 10 following is a matter which must be determined at a formal and regularly constituted meeting of the board and must be made a part of its records. This follows from the requirement that a copy of the estimate must be transmitted to the commission. *Carbone, Inc.* v. *Kelly*, 289 Mass. 602. Such an estimate requires investigation and ascertainment of facts, coöperative discussion and deliberation and the exercise of sound judgment. The purported notice sent to the commission under date of March 31, 1936, set forth in the record and already quoted, was not a copy of an estimate within the meaning of said § 17. It was not a copy of anything. It was said in *Damon* v. *Selectmen of Framingham*, 195 Mass. 72, 78, with citation of supporting authorities: "The general rule that such a board of public officers should act jointly, and that all should have an opportunity to participate in their action, is unanimously recognized." *Barnard* v. *Shelburne*, 222 Mass. 76, 79. The authority to make the estimate rested in the licensing authorities as a collective body. There is nothing in said § 17 which makes such an unauthorized notice as is disclosed on this record finally binding on the commission as establishing the quota of the town. The commission has no authority under the law to establish the quota for seasonal licenses under said § 17. That is vested exclusively in the local licensing authority. The effect of a copy of an estimate made by the local licensing authority, appearing on its face to have been made and transmitted in accordance with the statute, may be weighty, perhaps controlling. *Grover* v. *Smead*, 295 Mass. 11, 13. The estimate of the temporary resident population on the basis of which the licenses have been issued in the town of Salisbury, according to the allegations of the petition was made by two members of the licensing board of the town pretending to act on behalf of the board but without actual official authority so to act. Those allegations are agreed to be true. Moreover, there were transmitted to the commission two estimates purporting to be made during March, 1936, one being

five thousand five hundred larger than the other. That of itself is a strange circumstance. On the facts alleged and admitted to be true there is enough doubt about the validity of the estimate of the increased resident population of Salisbury during the summer months, and about the validity of licenses issued on that estimate, to make it the duty of the respondents as constituting the commission to deal with the situation. It is the mandatory duty of the commission under G. L. (Ter. Ed.) c. 138, § 64, as amended, already quoted, to take action when licenses in excess of the quota have been issued. This may involve an inquiry as to the validity of the estimate of the increased resident population during the summer months.

It is not necessary to determine whether there may be a remedy by certiorari against the licensing authorities of Salisbury respecting the estimates, or to define the extent of such remedy if it exists. See *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 212; *Westport* v. *County Commissioners*, 246 Mass. 556, 562; *Davis* v. *County Commissioners*, 153 Mass. 218; *Hammond* v. *County Commissioners*, 154 Mass. 509; *L'Homme* v. *Winchendon*, 288 Mass. 291, 293; *Rudnick* v. *Murphy*, 213 Mass. 470, 472; *Horton* v. *Attorney General*, 269 Mass. 503, 508–509. In any event, it is not a bar to the present proceeding, designed to enforce performance by the respondents of the statutory duty imposed on them.

A peremptory writ of mandamus is to issue to require the respondents to exercise the powers reposed in them by G. L. (Ter. Ed.) c. 138, § 64, as appearing in St. 1933, c. 376, § 2, and as amended by St. 1934, c. 385, § 20, to examine into the alleged illegal issuance of so called seasonal licenses for the sale of alcoholic beverages in the town of Salisbury for 1936, and to exercise their power of revocation and cancellation with respect to such seasonal licenses as shall be found to be in excess of the quota for said town for 1936.

*So ordered.*