CITY OF LAWRENCE & another *vs.* EDNA STRATTON & another.

Essex. November 12, 1942. — December 2, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Municipal Corporations*, Officers and agents, Disposition of property. *Agency*, Scope of authority, Ratification. *Deed*, Validity, Ratification, By municipal corporation. *Public Officer. Lawrence.*

A purported deed of real estate by the city of Lawrence was invalid because its execution and delivery by the mayor in behalf of the city were not duly authorized by a vote of the city council as required by § 32 of the city charter, St. 1911, c. 621, Part II.

A vote of the city council of Lawrence authorizing a conveyance of city real estate upon the condition that the grantee expend a specified sum in repairs to the property did not authorize the giving of a deed reciting that it was on condition that the grantee recondition a certain part of the buildings on the property, but not mentioning any sum to be expended by him, in exchange for the grantee's personal promise in writing to expend a stated sum which was less than that specified in the vote.

A vote duly and unanimously adopted by a majority of the city council of Lawrence present at a meeting could not be altered after the close of the meeting by the separate individual assents of all the members who had been present at the meeting.

A deed of real estate given in behalf of a city by its mayor without authority was not ratified by the facts that the city council took no action to disaffirm the deed until the commencement of a new administration under a new mayor over a year later and that the real estate in the meantime had been assessed to the grantee after the purported conveyance.

BILL IN EQUITY, filed in the Superior Court on January 7, 1942, against Edna Stratton and Robert M. Dobbins, seeking cancellation of a deed, purportedly given by the plaintiff city, and reconveyance of the property to it.

The suit was heard by *Morton*, J., by whose order a final decree was entered adjudging the deed void and directing that "for the purpose of perfecting the record, the defendant, Edna Stratton, convey to the plaintiff city . . . all her right, title and interest in the premises in question." The defendants appealed.

*P. L. Keenan,* (*T. A. Flanagan* with him,) for the defendants.

*J. P. Kane,* City Solicitor, for the plaintiffs.

RONAN, J. The plaintiff city in the spring of 1940 by tax foreclosure proceedings had acquired title to a large parcel of industrial property having an assessed valuation of $158,300. The disposition of the property was discussed at a meeting of the city council on April 29, 1940, but no definite action was taken. The mayor, on October 11, 1940, gave the defendant Dobbins an option to purchase the property for the sum of $1 provided the option was exercised on or before December 15, 1940. The option called for the delivery of a quitclaim deed. The grantee was to repair three fourths of the buildings which were to be used as a bonded or domestic wool warehouse and a scouring, carding and combing plant, but no part of the premises was to be used for the storage and sale of gasoline. The grantee was also to pay all taxes and assessments that might be levied or assessed after he had given notice that he intended to purchase the property. The execution of this option, so called, by the mayor was unauthorized by any action of the city council. According to the records of the city council an executive meeting of the city council was held on December 13, 1940, to discuss an offer of Dobbins to purchase the property. This meeting was held in the office of the mayor and was attended by the mayor and three aldermen. It was unanimously voted to sell the property to Dobbins or his nominee on condition that Dobbins spend $50,000 in repairing and restoring the buildings, and the mayor was authorized to execute and deliver the deed. The mayor then informed the council that he would discuss the matter with Dobbins and let them know if he agreed to this condition. The mayor later informed the council that Dobbins would agree to expend $40,000 on the property "and the members of the council individually assented to this change in the conditions of the agreement." This meeting was not open to the public and was not attended by the city clerk or the assistant city clerk. The records of the meeting were made up from information given

by the mayor and two aldermen to the assistant city clerk. On December 13, 1940, the mayor in the name of the city executed an agreement with the defendants in which they agreed to expend on or before January 1, 1942, not less than $40,000 in reconditioning the buildings on this property. The property was conveyed to the defendant Stratton by a deed dated December 13, 1940. The deed recited that the premises were conveyed subject to the condition that seventy-five per cent of the buildings should be repaired, restored and conditioned and that no part of the premises should be used for the storage and sale of gasoline or any other petroleum products. This deed made no mention of any obligation of the grantee to expend $40,000 on the property before January 1, 1942. The deed stated that the "sale is made in accordance with a vote of the Lawrence City Council, a copy of which is hereto attached." The certificate of the assistant city clerk, which was attached to the deed, stated that a special executive meeting of the city council was held in the mayor's office on December 13, 1940, which was attended by the mayor and three aldermen, all of whom were named, and then stated that "it was voted unanimously, on motion of Alderman Galvin, seconded by Alderman Roche, that the Mayor be authorized to sell the property of the Kunhardt Mills, which the City of Lawrence acquired by foreclosure of tax titles, to Robert M. Dobbins or his nominee, and the Mayor was further authorized to sign said deed and deliver said deed to the said Robert M. Dobbins or his nominee."

The city brought this bill in equity to set aside the deed on the ground that the mayor had no authority to execute it in behalf of the city, and on the further ground that the grantee had not expended the amount of $40,000. The city, at the trial in the Superior Court, elected to rest its case on the first ground. The defendants appealed from a final decree ordering Stratton to convey the property to the city.

The city charter of Lawrence is set forth in St. 1911, c. 621, Part II. Its city council consists of the mayor and four aldermen. § 4. The holding of regular and special

meetings of the council is regulated by § 24. The parties are in dispute concerning the validity of the meeting held on December 13, 1940, but it is unnecessary to decide this question in view of the conclusion that we have reached.

The method by which the city may convey its property is defined by § 32, which provides that "Upon vote of the city council the mayor shall sign, seal, execute and deliver in behalf of the city deeds and leases of lands sold or leased by the city, and other deeds, agreements, contracts, leases, indentures, assurances and instruments in behalf of the city, except as is otherwise provided herein." If we assume, but without making any intimation whatever, that the city council was empowered to convey property of considerable value to a private citizen for his individual benefit upon payment of a nominal consideration of $1, see *Whittaker* v. *Salem*, 216 Mass. 483, *Connor* v. *Haverhill*, 303 Mass. 42, yet a conveyance of the city's property could not be made except in compliance with the terms of § 32. The deed was invalid unless its execution and delivery were authorized by a vote of the city council. *Fiske* v. *Worcester*, 219 Mass. 428. *Fluet* v. *McCabe*, 299 Mass. 173. *Scullin* v. *Cities Service Oil Co.* 304 Mass. 75. *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, 236.

The vote passed by the council was for the conveyance of the property upon condition that Dobbins would expend $50,000 "to re-condition the mill buildings." That was the only vote that the council passed. The expenditure of $50,000 was a material element of the sale. In fact it was expressly made a condition of the conveyance. The deed that was given by the mayor made no mention of this amount or in fact of any amount. Instead, there was a condition inserted in the deed "that seventy-five percent of the buildings and structures on said premises shall be repaired, restored and conditioned." No one contends that this was the equivalent of the condition contained in the vote. No such provision as this appears in the vote. Neither did the vote preclude the grantee from using the premises for the storage or sale of gasoline. But none of the parties

contends that the conveyance was made upon condition that this last mentioned sum should be expended by the grantee. The claim is that this amount was reduced to $40,000. An agreement on December 13, 1940, between the defendants and the mayor purporting to act for the city provided that "the owners agree to spend or cause to be spent not less than Forty Thousand ($40,000) Dollars in the reconditioning of the buildings" and that this amount of money would be so expended not later than January 1, 1942. The only instrument the mayor was authorized to sign was the deed. The mayor by virtue of his office had no power to bind the city by such an agreement. *Abbott* v. *North Andover*, 145 Mass. 484. *Higginson* v. *Fall River*, 226 Mass. 423. *Fluet* v. *Eberhardt*, 294 Mass. 408. Furthermore, the council never authorized the sale of the property in exchange for any written personal promise of Dobbins or his nominee, Stratton, to expend any amount in rehabilitating the property. Neither did the council vote to transfer the property on condition that Dobbins should expend only $40,000 in repairing and restoring the property. The records of the city clerk show that after the vote was taken "the members of the council individually assented to" the reduction from $50,000 to $40,000. That action did not take place at any meeting but, according to the assistant city clerk who made up the records, that was "after the meeting." One member was absent at the meeting and the record does not show that all members assented to the reduction. The previous vote could not be amended in this respect by the separate individual consent of those who had passed the previous vote. The council under § 32, and in accordance with the settled principles of law, was required to act as a collective body in determining the terms of the conveyance and in authorizing the mayor to execute and deliver the deed. The council did not authorize the mayor to transfer the property upon condition that Dobbins should expend $40,000 instead of $50,000 on the mill buildings. *Reed* v. *Scituate*, 5 Allen, 120. *Murdough* v. *Revere*, 165 Mass. 109. *Damon* v. *Selectmen of Framingham*, 195 Mass. 72. *Adams* v. *County of*

*Essex,* 205 Mass. 189. *Rowe* v. *Peabody,* 207 Mass. 226, 236. *Barnard* v. *Shelburne,* 222 Mass. 76. *Carbone, Inc.* v. *Kelly,* 289 Mass. 602. *Pettengell* v. *Alcoholic Beverages Control Commission,* 295 Mass. 473.

We need not discuss the fact that the certificate of the assistant city clerk, which was attached to the deed, did not correctly and accurately set forth the entire vote of the city council. See *Hanson* v. *South Scituate,* 115 Mass. 336; *Wood* v. *Concord,* 268 Mass. 185; *Grover* v. *Smead,* 295 Mass. 11; *Scullin* v. *Cities Service Oil Co.* 304 Mass. 75.

The defendants offered no evidence. They conceded that they had not spent a dollar of the $40,000 that they admit they were obligated to expend upon the property. The failure of the city council to take any action to disaffirm the conveyance for a little more than a year and until the commencement of a new administration under a different mayor did not constitute a ratification of the transfer of the property, and the assessment of the real estate tax for 1941 to the defendant Stratton was not a recognition by the city that the conveyance to her was valid. *Rossire* v. *Boston,* 4 Allen, 57. *Reed* v. *Lancaster,* 152 Mass. 500, 505. *Brookline* v. *Whidden,* 229 Mass. 485. *Reed* v. *Springfield,* 258 Mass. 115. *Goodyear Park Co.* v. *Holyoke,* 291 Mass. 11.

The conveyance of the property under the terms and conditions under which it was attempted to be conveyed was never authorized by the city council. There was no error in finding the deed null and void and in ordering the defendant Stratton to reconvey the property to the city. *Wood* v. *Concord,* 268 Mass. 185. *Goodyear Park Co.* v. *Holyoke,* 291 Mass. 11. *Scullin* v. *Cities Service Oil Co.* 304 Mass. 75.

*Decree affirmed with costs.*