Curran, Dennis J., J.
After Michael Barry (Barry), a police officer in the Town of Lexington (the Town), sped his police car through an active construction zone at sixty miles per hour and gave two lackluster interviews, the Town bypassed him for a promotion to the position of sergeant. The Massachusetts Civil Service Commission (the Commission) then issued a decision requiring the Town to promote Bariy. Under G.L.c. 31, §44, the Town appealed the Commission’s decision to this Court.
The Town has moved for judgment on the pleadings under Mass.R.Civ.P. 12(c), alleging that the Commission substituted its judgment for the Town’s judgment. Barry has cross moved for judgment on the *107 pleadings, arguing that the Commission’s decision is supported by substantial evidence.
For the reasons that follow, the Town’s motion is ALLOWED and Bany’s cross motion is DENIED.
BACKGROUND
The facts are taken from the administrative record. The Town hired Bany as a patrol officer in 1996. Tr. 89. As a patrol officer, Bany contributed to programming, installing, and maintaining laptop computers in the police cars. Id. at 43-44. He also volunteered in the Town’s school system and served as president of the Local 377 of the International Brotherhood of Police Officers. Id. at 42, 95.
On August 23, 2002, the Town reprimanded Bany for driving his police car recklessly, at sixty miles per hour through an active construction zone. Id. at 21-22. Several contractors were working at the site, which contained heavy construction equipment and open trenches. Id. at 22. Although the contractors reported that Barry’s driving had frightened them, Barry claimed he had been driving only thirty to thirty-five miles per hour and denied driving recklessly. Id.
In 2005, the Town sought to fill four sergeant positions with candidates who had: the respect of their peers; leadership ability; a commitment to service, safety, and community policing; mature judgment; problem-solving ability; and self-awareness. Tr. at 6, 14. The Town valued these qualities because a sergeant acts as commanding officer when a lieutenant is absent. Id. Barry and eight other patrol officers applied for a promotion to the position of sergeant.[2] R. 40.
The Town interviewed each candidate twice: the first interview was with the police chief and two captains; the second was with six of the candidate’s peers.[3] Tr. 7. The Town articulated four reasons for bypassing Barry. First, the Town reasoned that Barry did not handle stressful situations well. Id. at 20. Second, the Town stated that Barry needed to improve his interpersonal skills. Id. at 17. (For example, when asked about a sergeant’s role, Barry emphasized direction and control and said he would sometimes need to be “the bad guy.” Tr. at 20.) Barry did not, however, mention coaching, mentoring, guiding, or giving constructive feedback. Id. Third, the Town felt Barry lacked self-awareness. Although Barry asserted he never had lost his temper, several of his peers believed this was not the case. Id. at 58. Fourth, Barry was unfamiliar with a citizen who often complained to the Town’s police department, and did not address how he would handle disgruntled citizens. Id.
Barry appealed to the Commission, which held a hearing at which four witnesses testified. Commissioner David Henderson found that the Town was biased against Barry because Barry served as union president and participated on the Lexington Public Safety Staffing Review Committee. The Commissioner also criticized the Town’s interview process.
The Town filed a complaint with this Court, and the parties now cross move for judgment on the pleadings.
DISCUSSION
The question before the Commission was whether “there was reasonable justification for the action taken by the [Town] in the circumstances found by the commission to have existed when the [Town] made its decision.” City of Leominster v. Stratton, 58 Mass.App.Ct. 726, 727-28 (2003) (quotation and citations omitted). Because the Town enjoyed broad discretion to choose which candidates to promote, the Commission would exceed its authority if it “substitute[d] its judgment about a valid exercise of discretion based on merit or policy considerations by [the Town].” City of Cambridge v. Civil Service Commission, 43 Mass.App.Ct. 300, 304-05 (1997).
This Court’s role is to “review the commission’s decision to determine if it violates any of the standards set forth in G.L.c. 30A, §14(7), and cases construing those standards.” Town of Plymouth v. Civil Service Commission, 426 Mass. 1, 5 (1997). The Court, therefore, is “required to overturn commission decisions that are inconsistent with governing law.” Id. (citations omitted).
In this case, the Commission substituted its judgment for the Town’s judgment by: (1) discounting the Town’s reprimand of Barry; (2) determining which criteria the Town should have used; and (3) second-guessing the Town’s interview procedure.
I. The Reprimand
In bypassing Bany, the Town relied, in part, on its reprimand of Barry after he sped recklessly through a construction zone. The Town also considered Bany’s refusal to accept responsibility for his behavior. The Commission, however, sought to explain away the reprimand by referring to it as “one incident of minor discipline, a reprimand for driving too fast, in a road construction area.” R. 498. The Commission also criticized the Town’s police chief for “emphasiz[ing] and dramatizing] the seriousness of the incident.” R. 482. Because the Town had a reasonable justification for relying on its reprimand of Barry, the Commission impermissibly substituted its judgment for the Town’s judgment by minimizing the significance of the reprimand.
II. Evaluation Criteria
The Town identified six qualities that sergeants must possess: (1) the respect of their peers; (2) leadership ability; (3) a commitment to service, safety, and community policing; (4) mature judgment; (5) problem-solving ability; and (6) self-awareness. The Commission apparently found these criteria unsatisfactory, and felt the Town should have considered Barry’s military service and computer skills. The Commission also opined that the Town should have *108 discounted another candidate who had not testified in court during a two-year period because in the Commission’s view, “[testimony as a witness in court is an important duty and responsibility of a police officer.” R. 474. The Town had a reasonable justification for selecting its evaluation criteria; the Commission substituted its judgment by deciding that other criteria were more important.
III. The Interview Process
The Commission was dissatisfied with the Town’s interview process for five reasons. First, the process was difficult to understand. Second, the Town used two interview panels. Third, members of the police department staffed each panel. Fourth, neither panel used a numerical scoring system. Fifth, it was unclear whether the panels asked each candidate the same questions. From these findings, the Commission leapt to the conclusion that the “process was designed to obstruct [Barry’s] opportunity for impartial consideration . . .” R. 498. Because the Town had a reasonable justification for devising the interview process, the Commission substituted its judgment to reinvent what the Commission believed to be a better process.
CONCLUSION
Once again, the Commission has engaged in revisionist and creative fact-finding. See Town of Shrewsbury v. Massachusetts Civil Service Commission, 26 Mass. L. Rptr. 113 (2009). Although the Town articulated four valid reasons for bypassing Barry, the Commission gave the Town no deference and substituted its own judgment for that of the Town’s. G.L.c. 31, §44 requires this Court to vacate the Commission’s decision because the Commission made legal errors that prejudiced the Town’s substantial rights.
ORDER
After hearing, the Town of Lexington’s motion for judgment on the pleadings is ALLOWED, and Michael Barry’s cross motion for judgment on the pleadings is DENIED. Judgment shall enter for the Town affirming its bypass of Barry and reversing the Commission’s decision.

 Although three candidates shared the last name Barry, the candidates were unrelated.

 The Town also considered test scores, three years of performance evaluations, and community feedback. Id. at 7.